UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAVON RIDGEWAY,

                          Petitioner,

     -vs-                                    **DECISION AND ORDER**
                                             **No. 10-CV-6037(MAT)**

SUPERINTENDENT CONWAY,

                          Respondent.
_____

## I.   Introduction

Pro se petitioner Javon Ridgeway ("Ridgeway" or "Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his detention in Respondent's custody. Ridgeway is currently incarcerated as the result of his conviction, following a jury trial in Niagara County Court, on charges of, inter alia, intentional murder and assault with a firearm.

## II.  Factual Background and Procedural History

Ridgeway was tried in Niagara County Court (Broderick, J.) on a consolidated indictment charging him with crimes committed over a span of several months against his estranged girlfriend, Lanerra Streeter ("Streeter"), and her cousin, Nicole Nabors ("Nabors").

The first incident occurred on April 1, 2006, when Ridgeway broke into Streeter's apartment. He struck her and damaged some of her property.  The second incident took place on May 7, 2006, while Streeter was acting as the doorkeeper at a graduation party. Ridgeway threatened to shoot her and then struck her in the head with a gun, causing a wound which required three surgical staples.

The third incident occurred on June 6, 2006, when Ridgeway went to Streeter's apartment and kicked in her door, damaging the doorway. Streeter narrowly escaped harm by hiding from Ridgeway.

Streeter testified before the grand jury against Ridgeway regarding his escalating acts of violence against her. On July 14, 2006, Ridgeway was arraigned on an indictment charging him with numerous offenses related to these three incidents. Represented by counsel, James Faso, Esq. ("Attorney Faso"), Petitioner entered a plea of not guilty.

While he was released on bail, Petitioner assaulted Devon Wood ("Wood") and was charged with first degree assault, first degree criminal use of a firearm, second degree criminal possession of a weapon ("CPW"), and third degree criminal possession of a weapon.

On September 9, 2006, about a week after the Wood assault, Ridgeway's fourth and final attack on Streeter occurred. Ridgeway went to Streeter's apartment and fatally shot her in the head. He then shot her cousin, Nabors, three times, rendering Nabors paralyzed from the waist down.

After a twelve-day search, and while a bench warrant was outstanding on the first indictment, Ridgeway was arrested on September 21, 2006, for Streeter's murder, the shooting of Streeter's cousin, and the Wood assault.

At the pre-trial suppression hearing, Detectives Berak and Coney of the Niagara Falls Police Department testified that after waiving his Miranda rights, Ridgeway gave a statement concerning what had happened on September 9, 2006, the day he murdered

Streeter and shot her cousin. Ridgeway told the police that he and Streeter had had "domestic issues" over the past two years because Ridgeway was "messing with other women." Ridgeway claimed that on September 9th, he had "accidentally" shot Streeter and Nabors while attempting to defend himself against a person named "Lamont." See Huntley Transcript ("Tr.") dated 1/17/07 at 14-16, 49-50, 71. Ridgeway admitted that there was an active order of protection against him in favor of Streeter. He also admitted that he had offered money to Streeter in exchange for her agreement not to testify against him. See Huntley Tr. dated 1/17/07 at pp. 15, 33, 59, 67-68, 79-80.

Ridgeway then was questioned about the September 2nd shooting, and he admitted that he shot Wood in an attempt to collect on a $6,500-drug debt. Id. at 20.

The discussion next turned to a series of home invasions and shootings in Niagara Falls, for which Ridgeway admitted responsibility. Id. at 24, 27-28.

After a break in the interrogation, Ridgeway indicated that he wanted to talk again and "be straight" with the detectives. Id. at 31. Ridgeway admitted shooting Streeter in the head after he "lost it" because Streeter would not accept his offer of money in return for not testifying against him. Id. at 33, 58-59.

The suppression court ultimately held Ridgeway's statements to the police regarding Streeter and Nabors to be admissible. His statements regarding the numerous other criminal acts for which he

admitted responsibility during the interrogation were held inadmissible on the prosecution's direct case.

The prosecution sought and was granted permission to utilize the murder victim's grand jury testimony, on the theory that Ridgeway intentionally forfeited his Sixth Amendment right of confrontation by procuring that witness's unavailability for trial.

On June 1, 2007, the jury returned a verdict convicting Ridgeway on fourteen out of the sixteen counts set forth in the consolidated indictment. He was acquitted of counts five and six, which charged him with second degree menacing and third degree CPW in connection with the May 7, 2006 incident involving Streeter at the graduation party, although he was convicted of assaulting Streeter on that date.

Following a hearing, the trial judge determined that persistent felony offender sentencing was warranted and, on July 26, 2007, imposed the following terms of imprisonment: count one (second degree burglary), 15 years determinate with 5 years post-release supervision ("PRS"); count two (fourth degree criminal mischief), 1 year in county jail; count three (second degree harassment), 15 days in county jail; count four (third degree assault), 1 year in county jail; count seven (second degree criminal trespass), 1 year in county jail; count eight (fourth degree criminal mischief), 1 year in county jail; count nine (second degree (intentional)) murder, 25 years to life; count ten (first degree assault), 25 years with 5 years PRS; count eleven (second degree CPW), 15 years with 5 years PRS; count twelve (third

degree CPW), 3½ to 7 years; count thirteen (first degree criminal use of a firearm), 25 years plus 5 years PRS; count fourteen (second degree CPW), 15 years plus 5 years PRS; count fifteen (third degree CPW), 3½ to 7 years; and count sixteen (aggravated criminal contempt), 3½ to 7 years. Counts two, three, four, seven, and eight, which involved Streeter, were set to run concurrently with all the other sentences. Counts nine, eleven, twelve, and sixteen, also involving Streeter but occurring on a different date, were set to run concurrently with each other but consecutively to count one. Counts ten, thirteen, fourteen, and fifteen, which involved Nabors, were set to run concurrently with each other but consecutively to counts one, nine, eleven, twelve, and sixteen.

The Appellate Division, Fourth Department, unanimously affirmed Petitioner's conviction. People v. Ridgeway, 59 A.D.3d 1111 (App. Div. 4th Dept. 2009). Leave to appeal to the New York Court of Appeals was denied.

This timely habeas petition followed in which Petitioner raises the following grounds for relief: (1) the trial court erred in admitting his statements to the police which allegedly were made in violation of his Sixth Amendment right to counsel; (2) the trial court erred in refusing to allow him to present evidence to enable the jury to determine whether his right to counsel had attached when he made those statements; (3) his Confrontation Clause rights were violated by the admission into evidence of the murder victim's grand jury testimony concerning earlier incidents in which Ridgeway had harmed, antagonized, threatened, and attempted to bribe her;

(4) the trial court improperly granted the consolidation of the indictments; and (5) his sentence was unduly harsh and excessive.

For the reasons that follow, the petition is dismissed.

## III. Legal Standards Applicable on Habeas Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's adjudication is "contrary to," or involved an "unreasonable application" of, clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Id. at 407-09. In addition, a state court's decision may be overturned only if the decision is "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

## IV.  Discussion

### A.  Ground One: Admission of Statements in Violation of the Sixth Amendment Right to Counsel

#### 1.  Overview

Petitioner argues that the trial court erred in refusing to suppress his statements to the police because they were obtained in violation of his right to counsel. As noted above, Petitioner committed the crimes of burglary, trespass, menacing, and assault in June 2006 against Streeter. In July 2006, Petitioner was indicted and counsel (Attorney Faso) appeared on his behalf.  In September 2006, Petitioner committed an assault and various weapons offenses involving Devon Wood. About a week after the Wood incident, Petitioner murdered Streeter, the complainant in the June 2006 incident, and committed an assault against her sister.

While being questioned on September 21, 2006, Petitioner waived his rights and made incriminating statements concerning the Streeter murder, as well as the assaults against Nabors and Wood. Petitioner moved to suppress the statements involving Streeter's death and the assaults on Woods and Nabors arguing that his right to counsel had attached when his attorney appeared on his behalf in July 2006, in connection with his indictment on the June 2006 charges of burglary and assault against Streeter.

A significant issue at the Huntley hearing was whether the detectives knew that he was represented by Attorney Faso on the pending charges from the July indictment involving Streeter or that Attorney Faso represented him in connection with the September 2nd

shooting of Wood. Although Ridgeway did not tell the police about the pending charges on which he was represented, the defense argued that the police officers had constructive knowledge of this fact due to, e.g., their conversations with other officers familiar with Ridgeway and Streeter to the effect that Ridgeway had been involved in an earlier incident at Streeter's apartment. See Huntley Tr. dated 2/06/07 at 9, 30-38, 48, 54-58. The police officers denied having any reason to know that Ridgeway might have had pending charges against him. Id. at 9-12, 19-20.

The suppression court credited the testimony by Captain Palmer regarding his conversation with Attorney Faso after the Streeter murder but before Ridgeway's arrest, and specifically discredited Attorney Faso's testimony about this topic. Captain Palmer testified, "Mr. Faso said to me, if you don't kill [Ridgeway] first[,] let me know when you take him into custody, and I said[,] why, are you representing him, and he said no, but I have in the past. So said we would let him know." 4/16/07 Huntley Tr. at 6. In contrast, Attorney Faso had testified that he verbally instructed the police not to talk to Ridgeway if they apprehended him but did not kill him first.

The suppression court concluded that "[t]he credible evidence demonstrated that Attorney Faso represented defendant Ridgeway on earlier pending burglary and assault charges . . . and did not represent Ridgeway upon the new murder case being investigated by the police when they took defendant into custody to question him regarding that homicide." The suppression court further found that

Ridgeway expressly waived his right to counsel, and that the police "did not impermissibly exploit the new offenses as a subterfuge for questioning the defendant regarding the earlier pending matters . . . ." Order Denying Suppression Motion Dated May 21, 2007 ("Huntley Order") at 5 (citations omitted), A.145.[1]

### 2.   Petitioner's Specific Right-To-Counsel Claims

#### a.   Petitioner claims that the interrogation conducted in the absence of counsel violated his right to counsel notwithstanding his Miranda waiver.

On appeal, Petitioner relied upon People v. Bing, 76 N.Y.2d 331, 338-39 (N.Y. 1990), to argue that his waiver of the right to counsel during the September 21st interrogation was invalid as a matter of law. Petitioner noted that counsel was representing him on a matter that ultimately was consolidated for trial with the unrepresented charges. Petitioner argued that under People v. Bing, he could not waive his right to counsel in the absence of the attorney who had already appeared on his behalf in the other matters.   The Appellate Division summarily affirmed the suppression court's ruling. People v. Ridgeway, 59 A.D.3d at 1112 (citations omitted).

Federal habeas courts may only review claims arising under federal law or the United States Constitution. See 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the

---

[1]
    Citations to "A.__" refers to the separately-bound Appendix on Appeal, submitted by Respondent as part of the state court records.

petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68 (1991).

"The New York Court of Appeals has consistently interpreted the right to counsel under the New York Constitution more broadly than the Supreme Court has interpreted the federal right to counsel." Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992); accord People v. Marin, 155 Misc.2d 941, 944 (N.Y. Sup. Ct. 1992) ("In its interpretation of Article 1, § 6 of the New York State Constitution, the New York Court of Appeals has consistently afforded defendants a right to counsel far more extensive than that derived from the federal Constitution.") (citing People v. Bing, 76 N.Y.2d at 338-39).

The New York cases on which Ridgeway relies make clear that the right he is asserting is broader under New York law than under federal law. The New York Court of Appeals in Bing explained,

> There are two well-defined situations in which the right [to counsel] is said to attach indelibly under the State Constitution and a waiver, notwithstanding the client's right to waive generally, will not be recognized unless made in the presence of counsel. The first, similar to the Federal right, deals with waivers after formal proceedings have commenced. The second, recognized only in New York, relates to uncharged individuals in custody who have retained or requested an attorney. Police authorities may not question them in the absence of counsel.

Bing, 76 N.Y.2d at 339 (citations omitted); accord, United States v. Broccolo, 797 F. Supp. 1185, 1196 (S.D.N.Y. 1992) ("Under the law of this Circuit, in contrast to what had been the law of the

State of New York during most of the last decade, see People v. Bing, 76 N.Y.2d 331, . . . , a suspect has no indelible Sixth Amendment right to counsel which requires the presence of counsel in order for a waiver of such right to be recognized.")).

Ridgeway's contention that the Appellate Division misapplied New York state's right-to-counsel jurisprudence as articulated in People v. Bing, 76 N.Y.2d 331, does not set forth a claim of federal constitutional magnitude, as the right guaranteed in Bing is recognized only as a matter of New York state law. Accord, e.g., Cook v. Donnelly, No. 02-CV-6073(VEB), 2009 WL 909637, at *6 (W.D.N.Y. Mar. 31, 2009) (citing Broccolo, 797 F. Supp. at 1196); Beekman v. Lacy, 918 F. Supp. 57, 63 (N.D.N.Y. 1996) ("[Petitioner]'s challenge to the interrogation conducted at the Schenectady Police Department is based on a right available to him only under New York law [i.e., People v. Bing], if at all, and not under federal law. Such a challenge cannot be the basis for relief under 28 U.S.C. § 2254.").

> **b. Petitioner claims that interrogation in the absence of counsel was prohibited because the two sets of crimes were closely related.**

Under New York law, after the right to counsel has indelibly attached by the actual appearance of an attorney representing the defendant in a criminal case, the police are prohibited from interrogating the individual concerning a new case in the absence of his attorney in two distinct situations. People v. Cohen, 90 N.Y.2d 632, 638 (N.Y. 1997). The first of these, and the one asserted by Ridgeway's appellate counsel to be present in his case,

is where the two criminal matters are so closely related transactionally, or in space or time, that questioning on the unrepresented matter would all but inevitably elicit incriminating statements regarding the matter in which there had been an entry of counsel. Id.[2] In both situations, the right to counsel which is recognized on the new case is a "derivative right to counsel," that is, the right is "derived" from the attorney's appearance in the prior related, criminal case. People v. Bing, 76 N.Y.2d at 344. Where, however, the new case is "unrelated," the defendant is free to waive his rights in the absence of counsel. Cohen, 90 N.Y.2d at 638.

Unlike the right to counsel under New York state constitutional law as articulated in People v. Cohen, 90 N.Y.2d 632, the federal constitutional right to counsel does not contain "an exception for crimes that are 'factually related' to a charged offense." Texas v. Cobb, 532 U.S. 162, 168-70 (2001). "[W]hen the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) test.[3]" Cobb, 532 U.S. at 173. The majority

---

[2]

    A second line of precedent, not pertinent here, involves interrogations concerning crimes less intimately connected, but where the police were aware that the defendant was actually represented by an attorney in one of the matters. Cohen, 90 N.Y.2d at 640 (citing People v. Ermo, 47 N.Y.2d 863).

[3]

    Blockburger held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision

opinion in Cobb rejected the dissenters' recommendation to define "offense" more broadly "in terms of the conduct that constitutes the crime that the offender committed on a particular occasion, including criminal acts that are 'closely related to' or 'inextricably intertwined with' the particular crime set forth in the charging instrument," id. at 186. The dissenters' approach in Cobb is essentially identical to that adopted by the New York Court of Appeals in, e.g., People v. Cohen, 90 N.Y.2d at 638, that when "the subject of the interrogation and the subject of the criminal charges are so inextricably interwoven in terms of both their temporal proximity and factual interrelationship as to render unavoidable the conclusion that any interrogation concerning the arrest would almost inevitably involve some potentially incriminating discussion of the facts of the crime itself," a defendant cannot be interrogated in the absence of counsel. Thus, the protections afforded by New York state court's interpretation of the state constitutional right to counsel are broader than those guaranteed under the federal constitution.

To the extent that New York state law exceeds federal constitutional requirements, it defines state law, and any misapplication of that state law is not cognizable on federal habeas review. Accord, e.g., Rivera v. Artus, CV-04-5050(DGT), 2007 WL 3124558, at *6-7 (E.D.N.Y. Oct. 25, 2007) (citing Hill v.

---

requires proof of a fact which the other does not." 284 U.S. at 304. The Blockburger test was articulated in the context of the Fifth Amendment's Double Jeopardy Clause, which prevents multiple or successive prosecutions for the 'same offense.'" Cobb, 532 U.S. at 173 (citations omitted).

_Senkowski_, 409 F. Supp.2d 222, 232 (W.D.N.Y. 2006) (holding that, to the extent a state law claim is broader than a similar federal right, the state law claim is not cognizable on federal habeas review)). As with his claim under _People v. Bing_, Ridgeway's contention that the Appellate Division misapplied New York state's right-to-counsel jurisprudence as explicated in _People v. Cohen_ likewise does not present a claim of federal constitutional magnitude and must be dismissed.

### B.   Ground Two: Denial of Opportunity to Litigate Before the Jury the Issue of Whether Right to Counsel Had Attached

Defense counsel requested permission to litigate before the jury the issue of whether Petitioner's right to counsel for the purpose of arguing that if it had, then Petitioner's statements to the police would be involuntary. The trial court denied his request. On appeal, the Appellate Division rejected this contention, finding that the determination of that issue required "a knowledge of the criminal justice system which not only lay people, but even lawyers who are not active in such practice, do not possess." _People v. Ridgeway_, 59 A.D.3d at 1111-12 (citations omitted).

Under New York Criminal Procedure Law ("C.P.L.") §§ 60.45 and 710.70, a defendant has the right to submit to the jury all claims that a statement was involuntarily made within the meaning of C.P.L. § 60.45. Even under New York law, the "right to counsel" issue is not a "voluntariness" issue to be submitted to the jury pursuant to C.P.L. §§ 60.45 and 710.70. _People v. Medina_, 76 N.Y.2d

331, 347 (N.Y. 1990). Because Ridgeway has not demonstrated a violation of New York state law, much less any right guaranteed by the federal Constitution, habeas relief cannot issue on this claim. See 28 U.S.C. § 2254(a).

### C. Ground Three: Violation of the Sixth Amendment's Confrontation Clause

Petitioner argues that his Sixth Amendment right to confrontation was violated when the trial court permitted the admission of the testimony given by Streeter, the murder victim, at the grand jury proceedings on the June 2006 burglary charges committed by Ridgeway. The testimony in question concerned earlier incidents in which Petitioner had harmed, threatened, and antagonized Streeter.

After an evidentiary hearing conducted pursuant to People v. Geraci, 85 N.Y.2d 359 (N.Y. 1995), the trial court concluded that the prosecution had presented clear and convincing evidence that Ridgeway had committed misconduct, that such misconduct caused Streeter to be unavailable, and Petitioner's misconduct was, at least in part, motivated by a desire to prevent her from testifying. On appeal, the Appellate Division stated that even assuming arguendo that the trial court erred in admitting the testimony, any error was harmless. People v. Ridgeway, 59 A.D.3d at 1112 (citing People v. Crimmins, 36 N.Y.2d 230, 237 (N.Y. 1975) (applying the harmless error test set forth in Chapman v. California, 386 U.S. 18 (1967), which asks whether a constitutional error was harmless beyond a reasonable doubt)).

As discussed below, the trial court did not unreasonably apply clearly established Supreme Court precedent concerning the forfeiture-by-misconduct exception to the Confrontation Clause.

### 1. Clearly Established Supreme Court Precedent Regarding the Forfeiture-By-Misconduct Exception to the Confrontation Clause

"Testimonial" hearsay evidence–such as prior testimony before a grand jury–may not be admitted against a criminal defendant unless the defendant had a prior opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 58-59 (2004). The right of confrontation guaranteed by the Sixth Amendment is not absolute, however, and a criminal defendant's intentional misconduct may result in a waiver of this right. Illinois v. Allen, 397 U.S. 337, 342-43 (1970).

The Confrontation Clause does not expressly provide for an exception "permit[ting] the use of a witness's unconfronted testimony if a judge finds . . . that the defendant committed a wrongful act that rendered the witness unavailable to testify at trial." Giles v. California, 554 U.S. 353, 358, 360 (2008) (noting that under the common law, "the exception applied only when the defendant engaged in conduct designed to prevent the witness from testifying")(emphasis in original).  Rather, "the rule of forfeiture by wrongdoing . . . extinguishes confrontation claims on essentially equitable grounds." Crawford, 541 U.S. at 62 (citation omitted); accord Davis v. Washington, 547 U.S. 813, 833 (2006). In other words, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." Davis, 547

-16-

U.S. at 833. Accord Cotto v. Herbert, 331 F.3d 217, 234 (2d Cir. 2003) ("[W]itness intimidation is the paradigmatic example of the type of 'misconduct' that can lead to the forfeiture of confrontation rights.")

In Giles, the Supreme Court limited the application of forfeiture-by-misconduct rule to situations where the defendant's misconduct was specifically intended to prevent the witness from testifying. Giles, 554 U.S. at 358 (holding that the Confrontation Clause did not allow testimonial statements by a murder victim on the basis of forfeiture-by-wrongdoing unless there was a specific showing that the defendant caused the victim's absence with the intent or purpose of preventing the victim's testimony). Accord, e.g., Ponce v. Felker, 606 F.3d 596, 597 (9th Cir. 2010). Thus, under Giles, the rule of forfeiture-by-wrongdoing applies in Confrontation Clause cases "only if the defendant has in mind the particular purpose of making the witness unavailable." Giles, 554 U.S. at 367 (quoting 5 C. Mueller & L. Kirkpatrick, Federal Evidence § 8:134, p. 235 (3d ed. 2007); other citations omitted).

Although the Supreme Court did not specify a particular procedure for determining whether the principle applies, in dicta, it cited with apparent approval the practice of requiring an evidentiary hearing before admitting a witness' statement over the objection of an accused. Giles, 554 U.S. at 373 n. 6. The Supreme Court has not taken a position on the proper standard to demonstrate forfeiture. In Davis v. California, it observed that courts generally have used the preponderance-of-the-evidence

standard in such cases. 547 U.S. at 83. The Supreme Court did not have occasion to consider the pertinent standard of proof in <u>Giles</u>, since that case was remanded.

Although the Supreme Court has not endorsed a particular evidentiary standard, the Second Circuit has held on direct review that the less stringent preponderance-of-the-evidence standard applies in these types of cases. <u>United States v. Mastrangelo</u>, 693 F.2d 269, 272-73 (2d Cir. 1983); <u>see</u> <u>also</u> <u>Cotto</u>, 331 F.3d at 235 ("[O]ur own circuit's requirement on the standard of proof applicable at a federal <u>Mastrangelo</u> hearing-that the government prove by a preponderance of the evidence that the defendant procured the witness's unavailability-is actually less stringent than the New York standard, which requires a showing of intimidation by clear and convincing evidence.") (comparing <u>Mastrangelo</u>, 693 F.2d at 272 (preponderance of the evidence standard) with <u>Geraci</u>, 85 N.Y.2d at 362 (clear and convincing standard)).

> **2. New York state law regarding forfeiture-by-misconduct is not contrary to, or an unreasonable application, of clearly established Supreme Court precedent.**

New York state's standard regarding the admissibility of an unavailable witness' hearsay statements, <u>e.g.</u>, <u>People v. Geraci</u>, 85 N.Y.2d 359, is in accord with the Supreme Court's formulation of the forfeiture-by-misconduct exception, <u>e.g.</u>, <u>Giles</u>, 554 U.S. at 367. Like the United States Supreme Court, the New York courts have accepted the forfeiture-by-misconduct exception to the rule

-18-

prohibiting admission of an unavailable witness's grand jury testimony if the prosecution shows that "'the defendant procured the witness's unavailability through violence, threats or chicanery[.]'" Geraci, 85 N.Y.2d at 365 (quoting Matter of Holtzman v. Hellenbrand and Sirois, 92 A.D.2d 405 (App. Div. 2d Dept. 1983)). In such situations, "the defendant may not assert either the constitutional right of confrontation or the evidentiary rules against the admission of hearsay in order to prevent the admission of the witness's out-of-court declarations[.]" Id. (citations omitted).

As a matter of New York law, the prosecution bears the burden of establishing, at a Sirois hearing,[4] that (1) the declarant is legally unavailable to give live testimony at trial; and (2) the defendant "either was responsible for or had acquiesced in the conduct that rendered [the declarant] unavailable for trial." Geraci, 85 N.Y.2d at 370. In Geraci, the New York Court of Appeals adopted the more exacting "clear and convincing evidence" standard as the proper standard of proof required to establish a foundation for the admission of hearsay evidence under the forfeiture-by-misconduct rule. 85 N.Y.2d at 366 (rejecting the "relatively undemanding 'preponderance of the evidence' standard" adopted by, e.g., the Second and Sixth Circuits); see also id. at 368-69; accord People v. Maher, 89 N.Y.2d at 462.

---

[4] "A Sirois hearing is the preliminary evidentiary hearing before the trial court to determine whether the factual elements for applying the exception have been established[.]" People v. Maher, 89 N.Y.2d 456, 462 n.2 (N.Y. 1997) (citation omitted).

Where as here, a homicide is involved and the hearsay statement sought to be admitted is that of the deceased victim, a third element is required to be established at the <u>Sirois</u> hearing. <u>Maher</u>, 89 N.Y.2d at 462.   In such cases, the prosecution must establish by clear and convincing evidence that the defendant was motivated, at least in part, by a desire to prevent the declarant from giving testimony against him in court. <u>Id.</u> ("[T]he <u>Geraci</u> exception cannot be invoked where, . . . , there is not a scintilla of evidence that the defendant's acts against the absent witness were motivated, even in part, by a desire to prevent the victim from testifying against him in court.").

The "motivation" requirement discussed in <u>People v. Maher</u> is consistent with the Supreme Court's holding in <u>Giles</u> that the forfeiture-by-misconduct exception applies only if the defendant, in rendering the witness unavailable, specifically intended to prevent the witness from testifying against him. Thus, the New York state courts' interpretation of the forfeiture-by-wrongdoing doctrine is not contrary to then-existing clearly established law.

Having concluded that Ridgeway cannot prevail under AEDPA's "contrary to" clause, the Court now turns to whether the state court's decision "involved an unreasonable application . . . of clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), in <u>Giles v. California</u>, or amounted to an unreasonable determination of the facts in light of the evidence presented, 28 U.S.C. § 2254(d)(2).

3.     **The state court did not unreasonably apply
       Giles or unreasonably determine the facts in
       light of the Sirois hearing evidence in
       admitting Streeter's grand jury testimony.**

The state courts did not unreasonably apply Giles or
unreasonably determine the facts in light of the Sirois hearing
evidence in admitting Streeter's grand jury testimony.  The first
element of the forfeiture-by-misconduct exception (unavailability)
was not in dispute, since Streeter clearly was legally unavailable
as the result of her death. See Order Dated May 29, 2007 ("Sirois
Order") at 5 , A.165.

The second element–that Streeter's unavailability was due to
Ridgeway's actions in shooting her to death–was found by the trial
judge to have been established by clear and convincing evidence.
The pertinent proof included Ridgeway's voluntary confession and
his various other admissions, which were proven through the police
officers' testimony at the Sirois hearing, the suppression hearing,
and the grand jury. Id.  Hearsay is entirely permissible at a
Sirois hearing. See Geraci v. Senkowski, 23 F. Supp.2d 246, 258
(E.D.N.Y. 1998) ("'[S]uccessful witness intimidation would often
not be provable at all if hearsay were not permitted,' since the
most direct source of evidence of intimidation is the very witness
whose intimidation prevents him or her from testifying in the first
place.") (quoting United States v. Mastrangelo, 693 F.2d at 273),
aff'd, 211 F.3d 6 (2d Cir. 2000).

Finally, as to the "motivation" element, the trial judge found
clear and convincing evidence–both  direct and circumstantial–that

"at least in part, the defendant's actions in killing Ms. Streeter were motivated by a desire to specifically prevent her from rendering testimony against him." <u>Sirois</u> Order at 6, A.166. The reliance by the trial judge on circumstantial evidence was not incorrect as a matter of federal law. See <u>Cotto</u>, 331 F.3d at 234-35 ("Certainly, confrontation rights may only be waived by a defendant through a knowing and intentional relinquishment. . . . But there is no Supreme Court caselaw definitively establishing the circumstances sufficient, or the standard of proof applicable, in analyzing waiver cases under the Confrontation Clause. And petitioner offers no compelling reason why the evidence of 'intentional relinquishment' cannot be circumstantial, as was the case here.") (internal quotations and citations omitted); see <u>also</u> <u>Drummond v. Cunningham</u>, No. 08-CV-4290 (KAM), 2010 WL 5583116, at *7 (E.D.N.Y. Dec. 13, 2010) ("Indirect or circumstantial evidence may suffice to establish witness tampering.") (citing <u>Cotto</u>, 331 F.3d at 235; <u>LaTorres v. Walker</u>, 216 F. Supp.2d 157, 168 (S.D.N.Y. 2000) ("[F]ederal courts have long recognized that circumstantial evidence is not inherently weaker than direct evidence.") (collecting cases)).

Under the standard of review mandated by AEDPA, it is the petitioner who, in challenging a state court's factual determination, bears "the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" <u>Cotto</u>, 331 F.3d at 233 (citing 28 U.S.C. § 2254(e)(1)). Ridgeway has not rebutted the presumption of correctness accorded to the following findings of

fact, determined by the trial judge to be especially significant: (1) Ridgeway was a multiple felony offender, and conviction of another felony would have rendered him susceptible to a life sentence as a persistent felony offender; (2) he knew that the victim had had him arrested and charged with several felonies; (3) he also knew that she was the primary witness against him, and her testimony "placed [his] future in serious jeopardy"; (4) he was aware that there was an order of protection against him in favor of the victim; and (5) he offered the victim money in an attempt to induce her not to testify against him, and became enraged when she told him that regardless of her actions, he would "nonetheless still do at least ten years in prison". Sirois Order at 6-7, A.166-67 (citations and quotations omitted).

Finally, the "most telling indicator demonstrating that Ridgeway acted against Streeter "in part for purposes of silencing her testimony" was "his further actions seeking to murder [Nabors,] the only eyewitness to the first slaying[,]" id. at 7-8, A.167-68. As the trial judge pointed out, Ridgeway did not know Nabors and had no grievance against her; his "only motivation" for attempting to kill her was to prevent her from testifying against him with regard to the Streeter murder. Id. (emphasis in original). "Judges may 'use their common sense in drawing inferences' from the evidence presented at Sirois hearings." Drummond v. Cunningham, No. 08-CV-4290 (KAM), 2010 WL 5583116, at *7 (E.D.N.Y. Dec. 13, 2010) (quoting Geraci, 23 F. Supp.2d at 258).

In light of the proof adduced at the <u>Sirois</u> hearing, the trial judge reasonably concluded that "[a] chain of evidence (circumstantial, direct and by admission) leads to the inescapable conclusion" that Ridgeway caused Streeter's unavailability "in part, for the specific purpose of silencing [her]." <u>Sirois</u> Order at 8, A.168. Indeed, the evidence of Petitioner's role in intimidating the prosecution's chief witness and ultimately preventing her live testimony was far more extensive than that held sufficient by courts in this Circuit in similar cases. See <u>Cotto v. Herbert</u>, 331 F.3d at 233 (on habeas review, finding sufficient evidence of petitioner's involvement in witness intimidation, in light of the timing of the threats and the fact that petitioner was "the only person who stood to benefit"); <u>Drummond</u>, 2010 WL 5583116, at *9-*10 ("In light of the uncontradicted evidence of threats and a possible bribe attempt by petitioner's friend and family, as well as contemporaneous threatening phone calls, the state courts acted reasonably in inferring that petitioner knew of and acquiesced in the threats against Williams."); <u>cf.</u> <u>Perkins v. Herbert</u>, 596 F.3d 161, 173 (2d Cir. 2010) (finding insufficient evidence of petitioner's involvement in alleged threats where a co-defendant likewise had the motive to threaten the witness, and where prosecutors presented no evidence that petitioner had the opportunity to threaten the witness).

One aspect in which the Supreme Court's standard in <u>Giles</u> and the New York state standard in <u>Geraci</u> may differ is the degree to which the defendant's misconduct must be motivated by the desire to

silence the witness's testimony. The New York standard requires clear and convincing evidence that the defendant's misconduct was designed "at least in part" to prevent the witness from testifying. Giles simply stated that the defendant's misconduct must be "designed" to prevent the witness from testifying.

However, the Court does not believe that Giles may only be reasonably read to mean a defendant must be motivated entirely by a desire to render the witness unavailable. This conclusion is buttressed by the procedural posture of Giles: The lower court in Giles had held that it was enough that the defendant caused the witness's availability, regardless of his motivation. The Supreme Court overturned that decision, stating that the forfeiture by wrongdoing doctrine applies only where the defendant engages in conduct which causes the unavailability of a witness, and which is "designed to prevent the witness from testifying." Giles, supra. The lower court had not required any proof of the defendant's motivation, and the Supreme Court held in Giles that this was an incorrect reading of its precedents.

Nor can the New York courts' evolution of the forfeiture-by-misconduct doctrine be seen as unreasonable. Significantly, before Giles, no holding from the Supreme Court required state courts to restrict the forfeiture exception to those cases in which a defendant intended to prevent a witness from testifying. Ponce, 606 F.3d at 606 (emphasis supplied). The New York Court of Appeals,

however, had incorporated the "motivation" requirement years
earlier in, e.g., People v. Geraci, 85 N.Y.2d 359.

### 4. Harmless Error

Even if the admission of the testimony was contrary to or an
unreasonable application of clearly established federal law, the
state court's decision that the error would have been harmless was
not an unreasonable determination. Ponce v. Felker, 606 F.3d at 606
(citing Fry v. Pliler, 551 U.S. 112, 119 (2007) ("[A] federal court
may not award habeas relief under § 2254 unless the harmlessness
determination itself was unreasonable.")). There was weighty
evidence against Petitioner independent of the unconfronted grand
jury testimony, including testimony by Nabors, Streeter's cousin,
and Petitioner's voluntary confession. In light of this evidence,
it was not unreasonable for the state court to determine that the
additional testimony about Streeter's fear of Petitioner and the
threat he posed to her did not have a "substantial and injurious
effect or influence in determining the jury's verdict." Brecht v.
Abrahamson, 507 U.S. 619, 631 (1993) (internal quotation marks
omitted).

### D. Ground Four: Erroneous Consolidation of the Indictments

Under both state and federal law, decisions to sever "are
committed to the broad discretion of the trial court, and will be
reversed only upon a showing of substantial prejudice." United
States v. Alvarado, 882 F.2d 645, 655 (2d Cir. 1989), cert. denied,
493 U.S. 1071 (1990); see also N.Y. Crim. Proc. Law § 200.20(3)(a)

(the trial court, "in the interest of justice and for good cause shown," may "in its discretion, order that any such offenses be tried separately from the other or others thereof"; "good cause" includes but is not limited to situations where there is "[s]ubstantially more proof on one or more such joinable offenses than on others and there is a substantial likelihood that the jury would be unable to consider separately the proof as it relates to each offense").

"Joinder of offenses rises to the level of a constitutional violation only if it actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process." Herring v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993) (collateral review of habeas petition; holding that denial of severance did not warrant reversal of conviction)(quotation omitted). Although "[t]here is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively," the Supreme Court has "explicitly accepted that '[t]his type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person . . . in the same trial is a valid governmental interest.'" Herring, 11 F.3d at 377 (quoting Spencer v. Texas, 385 U.S. 554, 562 (1967)).

As the Second Circuit has explained, "[s]ubstantial prejudice does not simply mean a better chance of acquittal." Alvarado, 882

F.2d at 655 (citation omitted). Thus, a petitioner cannot demonstrate the requisite level of prejudice simply by alleging that it would have been more favorable for the defense to have had separate trials. Because Ridgeway has not demonstrated "actual prejudice" resulting from the joint trial, he cannot show that his federal due process rights were violated by the consolidation of the indictments, which was not improper as a matter of state law.

### E.   Ground Five: Harsh and Excessive Sentence

A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir.1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948)). Here, because Ridgeway's sentence falls within relevant statutory parameters, no federal constitutional issue is presented. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (rejecting habeas petitioner's claim that his sentence was excessive; "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law")(citations omitted); accord Ross v. Gavin, 101 F.3d 687, 1996 WL 346669, at *1 (2d Cir. June 25, 1996) (unpublished opinion).

## III. Conclusion

For the reasons stated above, Javon Ridgeway's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

**S/Michael A. Telesca**

_____
            MICHAEL A. TELESCA
            United States District Judge

DATED:     August 18, 2011
           Rochester, New York